# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

_____

| | |
|---|---|
| **In Re:** <br><br> ROGER PARKER and <br> STACEY PARKER, <br><br> **Debtors.** | **Bankruptcy Case** <br> **No. 04-40037** |

_____

# MEMORANDUM OF DECISION
# RE CONFIRMATION

_____

On January 31, 2005, the Court conducted a hearing to consider confirmation of the Amended Chapter 13 Plan (the "Plan") proposed by Debtors Roger and Stacey Parker, Docket No. 45. Creditors Solavie Ventures, Inc. and Spa Solavie, Inc. objected to confirmation, Docket Nos. 50 and 52, although they did not appear at the confirmation hearing. Subject to the Court's resolution of the Creditors' outstanding

MEMORANDUM OF DECISION - 1

objections, the Chapter 13 Trustee, L.D. Fitzgerald, recommended at the hearing that the Plan be confirmed.

As discussed below, after a review of the record, including the evidence and testimony submitted to the Court at the confirmation hearings,[1] together with the arguments of the parties, the Court finds and concludes that Creditors' objections to confirmation should be denied and Debtors' Plan should be confirmed.[2]

## Background and Facts

Debtors are a hard-working couple endeavoring to raise five children.  They live with their family in a modest rented house in Hailey.

---

[1] The Court conducted multiple confirmation hearings in this case.  In particular, the parties presented evidence and testimony in support of their positions at evidentiary hearings held on April 6 and May 7, 2004.  In its May 10 Order, Docket No. 39, the Court temporarily suspended proceedings in the bankruptcy case pending completion of certain proceedings in state court, discussed below.  When those proceedings were concluded, Debtors filed their Amended Plan and the case was again scheduled for a confirmation hearing.  The Court has relied upon the facts as developed at all the confirmation hearings in reaching its findings, conclusions, and decision herein.

[2] This Memorandum constitutes the Court's findings of fact and conclusions of law for purposes of Fed. R. Bankr. P. 9014 and 7052.

MEMORANDUM OF DECISION - 2

Roger[3] is the manager of the City's wastewater treatment plant. Stacey has held a variety of jobs over the years, has been, for the most past, continually employed and has contributed to the financial support of the family.

In July 2002, at the invitation of Pamela Rae, Stacey agreed to accept an office position with Creditors, which collectively operate a Sun Valley day spa business. Ms. Rae suspected a prior employee had been stealing from the business. In addition to performing other clerical and customer service duties, Ms. Rae asked Stacey to ferret through Creditors' books and records to document the other employee's misdeeds. Stacey, who had only limited useful experience "doing books" for small businesses, and no formal accounting education or training, took the job and accepted the challenge. That proved to be a mistake for all concerned.

It is apparent to the Court that, from the inception of her employment, Stacey was in over her head, or in other words, incapable of doing the job she was charged with completing. Ms. Rae probably needed

---

[3] The Court will refer to Debtors by their first names solely for convenience. No disrespect is intended.

MEMORANDUM OF DECISION - 3

a forensic accountant.  And although Stacey believed she was more, what Ms. Rae got was an energetic mother and homemaker who possessed only rudimentary skills with simple bookkeeping systems.  As a result, over the next few months, Stacey, along with others she enlisted to help her, undertook an exhaustive review of Creditors' business records and transactions, spending hundreds of hours playing detective, committed to detecting a thief.  In hindsight, what Stacey's efforts produced was a confused and unproductive mass of practically useless data.

Under her arrangement with Ms. Rae, Stacey was paid by the hour to complete this daunting project.  She was also authorized to hire others, also payable hourly, to help her.  It appears that while Stacey was engaged in her "investigation," and for whatever good reasons, Ms. Rae exercised little control or supervision over Stacey, and did not give her work any comprehensive review as time passed.  As agreed, Stacey submitted regular, periodic hourly billings to Ms. Rae for her "bookkeeping;" Stacey's billings were paid.

Eventually, after spending thousands of dollars on Stacey's

MEMORANDUM OF DECISION - 4

efforts, Ms. Rae became suspicious that her companies were not receiving fair value for what they were paying Stacey. No hard evidence of theft by the prior employee had been produced; only more billings came from Stacey. In addition, Ms. Rae discovered some company checks she felt had been forged, and she suspected Stacey was the culprit. Frustrated and feeling she had been "twice-burned," Ms. Rae confronted Stacey with her complaints, fired her, and sued her in state court to recover for the "over-billings" she had paid and for forging the checks. Ms. Rae also went to the police to complain about Stacey.

Local law enforcement did a brief investigation and concluded, as near as the Court can tell from the evidence, that Stacey had forged the checks. The Blaine County prosecutor brought felony charges against her. Stacey claimed in state court, and in her sworn testimony to this Court, that she was innocent of any crime or wrongdoing toward Creditors. She contends that she did not fraudulently bilk Creditors out of payments for her "accounting services," and she vehemently denies forging any checks.

But when Stacey sought counsel, the attorneys she consulted

MEMORANDUM OF DECISION - 5

predicted that the costs of her criminal defense would be enormous and unbearable when measured against her family's resources. Debtors therefore faced a dilemma. Although firmly believing Stacey was not guilty of any crime, if Debtors fought the charges in state court, it would no doubt ruin them financially. On the other hand, if Stacey conceded her guilt, she could expect severe consequences including, potentially, jail. Whether wisely or not, Stacey decided that she would rather bear the burdens of a criminal conviction than force her family to endure the trauma of a criminal trial and the cost of financing her defense. She made a deal with the prosecutor and entered a guilty plea to the forgery charges.

While awaiting final sentencing, Creditors' state court action against Stacey was set to commence on January 13, 2004. Debtors filed a Chapter 13 petition on January 12. Docket No. 1. When Debtors' original proposed plan, to which Creditors had objected, came on for confirmation hearing, this Court declined to make a definitive decision in this case until Stacey's sentencing was complete, given the implications that jail and a restitution award could have on Debtors' ability to pay their creditors. *See* Order, Docket No. 39.

MEMORANDUM OF DECISION - 6

The state court sentenced Stacey to serve a short jail sentence, which she completed.  In addition, and finally on January 18, 2005, the state court ordered Stacey to make restitution to her former employer totaling about $30,000, which she must pay at the rate of $300 per month. *See* Ex. 1, Docket No. 56.  Debtors amended their budget schedules to reflect payment of the restitution as ordered by the state court, Docket No. 54, and have offered their Amended Plan for confirmation, Docket No. 45.

## Discussion and Disposition of the Issues

Creditors object to confirmation of Debtors' Plan arguing the Plan fails to satisfy two important requirements under the Code.  First, Creditors argue that the Plan is not feasible, or in other words, that Debtors will not be able to make the payments they promise to creditors under the Plan, especially in light of Stacey's monthly restitution obligation. *See* 11 U.S.C. § 1325(a)(6).  Second, Creditors contend that Debtors have not shown their Plan is submitted in good faith. *See* 11 U.S.C. § 1325(a)(3).

The Trustee disagrees with Creditors' position, and instead, recommends that the Plan be confirmed.[4]  He argued to the Court that

---

[4] As noted, Mr. Fitzgerald is the Chapter 13 Trustee assigned to Debtors' case.  Over the years, this trustee has administered literally thousands of such

MEMORANDUM OF DECISION - 7

Debtors have given him all the financial information he needs to conclude they have a reasonable prospect of making the Plan payments. In particular, he pointed to the fact that Debtors are current on the payments that they committed to make when the case was commenced over a year ago. As for the future, the Trustee has examined Debtors' budget and, while it is undoubtedly a frugal one, feels it is credible, even including the new, required monthly restitution payment. Finally, the Trustee reminds the Court that Debtors are motivated by their financial predicament to successfully complete the Plan, since a Chapter 7 liquidation would offer them little solace. The Trustee also finds no evidence of Debtors' bad faith in pursuing a Chapter 13 plan as a solution to their debt and other problems.

      Based upon the evidence, the Court finds the Trustee's assessment persuasive. The Plan will be confirmed. The reasons for the Court's conclusion follow.

---

cases. Clothed with such experience, the Court has found his recommendations regarding the feasibility of proposed plans to be insightful and dependable. Based upon this track record, the Court assigns considerable weight to his opinions in this context.

MEMORANDUM OF DECISION - 8

**1.    Debtors' Plan is Feasible.**

The Court may only confirm a plan if, among other things, the debtor shows he "will be able to make all plan payments under the plan and to comply with the plan."  11 U.S.C. § 1325(a)(6).  Whether a plan is feasible presents a question of fact, and the burden of proof lies with the debtor.  *In re Hult*, 04.1 I.B.C.R. 18, 19 (Bankr. D. Idaho 2004) (citing *In re Gavia*, 24 B.R. 573, 574 (B.A.P. 9th Cir. 1982)).  All Chapter 13 plans involve some degree of speculation; debtors need not be able to guarantee success to satisfy the feasibility requirement.  *Id*. at 20.  *See also First Nat'l Bank of Boston v. Fantasia* (*In re Fantasia*), 211 B.R. 420, 423 (B.A.P. 1st Cir. 1997) ("To satisfy feasibility, a debtor's plan must have a reasonable likelihood of success, i.e., that it is likely that the debtor will have the necessary resources to make all payments as directed by the plan.").

In this case, Debtors have submitted a realistic budget that persuades the Court they should be able to make the payments proposed under their Plan.  Both Debtors are employed.  Roger has worked for the City of Hailey for a considerable time and currently holds a supervisory position.  It appears he is secure in his employment.  While the

MEMORANDUM OF DECISION - 9

uncertainties surrounding the criminal proceedings have made it difficult for Stacey to hold a steady job recently, with those proceedings concluded, she has secured a new job. There is no reason to believe she will not continue to be employed. Debtors have therefore demonstrated they have a reasonably secure income to support their Plan.

Debtors' projected expense items are conservative and unremarkable, save for the restitution payment. While the Court is sure Debtors' task will not be easy, there is nothing apparent from Debtors' projected costs of living that suggests they will be unsuccessful.

The Court also finds both Debtors to be sincerely motivated to keep their jobs and complete their Plan. They have thus far made all payments required by their Plan while the case has been pending. And, as noted above, the Court gives the Trustee's recommendation supporting the Plan's feasibility in this case considerable weight.

All things considered, the Court finds Debtors have shown they have a realistic prospect of making the payments they propose under their Plan. Debtors' Plan therefore satisfies the requirements of § 1325(a)(6).

MEMORANDUM OF DECISION - 10

**2.     Debtors' Plan is Submitted in Good Faith.**

A second prerequisite to confirmation is the debtor's demonstration that "the plan has been proposed in good faith and not by any means forbidden by law . . . ." 11 U.S.C. § 1325(a)(3). Good faith is assessed by review of the totality of the circumstances in each case. *In re Hult*, 04.1 I.B.C.R. at 20 (citing *In re Villanueva*, 274 B.R. 836, 841 (B.A.P. 9th Cir. 2002)). The Ninth Circuit has identified multiple factors to aid bankruptcy courts in this analysis; they need not be recited at length here. *Id*. (citing *Chinichian v. Campolongo* (*In re Chinichian*), 784 F.2d 1440, 1444 (9th Cir. 1986); *Goeb v. Heid* (*In re Goeb*), 675 F.2d 1386, 1390 (9th Cir. 1982); *In re Villanueva*, 274 B.R. at 841; *In re Johnson*, 262 B.R. 831, 839 (Bankr. D. Idaho 2001); *In re Haas*, 01.4 I.B.C.R. 132, 133, (Bankr. D. Idaho 2001)).

The Court has, obedient to the appellate decisions cited above, carefully weighed all the various "good faith" factors. While never an exact process, in the exercise of its discretion, the Court finds that the scales tip in Debtors' favor. A couple of points bear special mention here.

Creditors complain that Stacey defrauded them and that Debtors filed their bankruptcy case solely to thwart Creditors' state court

MEMORANDUM OF DECISION - 11

efforts to recover damages from them.  In this regard, Creditors argue Debtors are using Chapter 13 to shield them from the consequences attending Stacey's alleged criminal conduct.

No doubt, absent Debtors' problems with Creditors, Debtors would not likely need Chapter 13 relief.  In that respect, the Court concurs that Debtors sought bankruptcy help primarily to contend with Creditors' collection efforts.  But while the Court concurs that Chapter 13 should not be used as a financial haven for crooks, Debtors do not abuse the purposes of Chapter 13 in this case.

Stacey did not escape punishment by filing for Chapter 13 relief.  She served time in jail.  And under the state court's most recent restitution award, Ex. 1, Docket No. 56, Stacey must pay Ms. Rae about $30,000 in restitution.  Spa Solavie's amended proof of claim asserts it is owed $37,013.35, Claim No. 6, and Solavie Venture's amended proof of claim asserts it is owed $838.50, Claim No. 17.  Both of these claims were filed before the state court issued its latest restitution award.  While the state court ordered restitution be paid to Ms. Rae individually, based on the record, the Court assumes the debt represented by the restitution

MEMORANDUM OF DECISION - 12

judgment is the same debt shown by the two proofs of claim filed in this bankruptcy case by her companies.[5] In other words, as she must, under the Plan, Stacey will pay the bulk of Creditors' claims against her. Contrary to Creditors' argument, this is clearly not a situation where Debtors are using Chapter 13 to escape payment of otherwise nondischargeable debts.

Moreover, based upon the evidence submitted to this Court (as opposed to the facts that may have been available to the law enforcement authorities or to state court), while Stacey pleaded guilty to victimizing Creditors, it is not at all clear any criminal conduct occurred here. To be sure, Stacey's commitment to undertake and complete a comprehensive, effective audit of Creditors' financial dealings with the suspect employee was likely misguided, perhaps even foolish. Stacey

---

[5] Debtors objected to allowance of Creditors' proofs of claims. Docket Nos. 28, 29. Debtors' objections were also considered at the evidentiary hearings conducted by the Court on April 6 and May 7, 2005. As noted, the Court declined to decide the issues submitted at those hearings until the state court criminal proceedings were complete. Order, Docket No. 39. Debtors' objections to Creditors' claims have never been noticed for further hearing. Creditors' restitution obligation, about $30,000, is to be paid in full "outside the Plan." If Creditors desire to share in the modest amount of pro rata distributions under the Plan to be made to unsecured creditors for amounts in excess of the restitution obligation, and assuming Debtors continue to object to that approach, Debtors' objections to Creditors' claims should again be set for a hearing. Given the small amounts in controversy, though, the Court recommends that Debtors' objections to Creditors' claims be settled, if possible.

MEMORANDUM OF DECISION - 13

apparently lacked the training and ability to do the job, even if she had the enthusiasm to be successful.  And Stacey's conduct in billing Creditors for the vast amounts of time she expended while floundering in her task was unfair to Creditors.  But in retrospect, Ms. Rae certainly must have been a trusting soul to simply honor all these bills without serious question.  On this record, the Court was not persuaded Stacey acted with malice or improper purpose in billing Creditors the amounts she did.  And the Court was also not persuaded that Stacey forged any of Creditors' checks.

Instead, the Court is comfortable accepting Debtors' explanation that although Stacey was not guilty of any crime, Debtors agreed Stacey would plead guilty to the theft charges primarily to avoid the emotional stress to her and the family, as well as the crushing financial expense of a criminal trial.  Put another way, reviewing what the Court was given, Stacey was probably an inept auditor; she was not a devious felon.

Under these circumstances, Debtors' resort to Chapter 13 is in all respects defensible, even prudent.  Though burdened by the restitution judgment, through the Plan, Debtors can protect their essential, albeit

MEMORANDUM OF DECISION - 14

modest, assets,[6] while paying as much as they can afford toward their creditors' claims.[7]  To the Court, this is a proper use of Chapter 13.

## Conclusion

Debtors have adequately shown they can make the payments proposed in the Plan, and that the Plan was submitted in good faith. Creditors' objection to confirmation will be denied, and consistent with the Trustee's recommendation, the Plan will be confirmed.

Counsel for Debtors shall promptly submit an appropriate form of order confirming the Plan for entry by the Court; the Trustee shall approve the form of order.

Dated: February 9, 2005

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

---

[6] Debtors' amended plan proposes to surrender their pickup and a hot tub to secured creditors.

[7] Debtors' amended budget called for them to use $50.00 per month to help with their child's college expenses.  At the Trustee's suggestion, they have agreed to forego this expense, and to increase their Plan payment by a like amount.

MEMORANDUM OF DECISION - 15